UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 18 Cr. 890 (SDA)

DARIO QUIRUMBAY,

Sentence

Defendant.

------------------------------x

New York, N.Y.
April 1, 2019
10:00 a.m.

Before:

HON. STEWART D. AARON,

Magistrate Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
RYAN B. FINKEL
Assistant United States Attorney

EDWARD J. BILINKAS
Attorney for Defendant

(Case called)

MR. FINKEL: Good morning, your Honor. Ryan Finkel, for the government.

THE COURT: Good morning.

MR. BILINKAS: Edward Bilinkas, appearing on behalf of Mr. Dario Quirumbay.

THE COURT: All right. Thank you.

Everyone, please be seated.

Mr. Quirumbay, I am Judge Aaron. On December 26 of 2018, I accepted your plea of guilty to one count of providing contraband in prison in violation of Section 1791(a)(1), (b)(4), and 2 of Title 18 of the U.S.C. You are now here for sentencing.

Mr. Bilinkas and Mr. Finkel, is there any reason why sentence should not be imposed at this time?

MR. FINKEL: No, your Honor.

MR. BILINKAS: No, your Honor.

THE COURT: Mr. Quirumbay, is there any reason why I should not sentence you at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. I have received a copy of the presentence investigation report, the addendum, and the sentencing recommendation from the court's probation office, all filed on March 7, 2019. I've also received a sentencing letter from Mr. Quirumbay's attorney which was filed on

March 19 of 2019. I received a sentencing submission from the government that was filed on March 22, 2019, and eight letters of support from members of Mr. Quirumbay's family, his friends and fellow Marines, as well as a letter from the facility where Mr. Quirumbay is receiving treatment.

Have both sides seen these materials?

MR. FINKEL: Yes, your Honor.

MR. BILINKAS: Yes, your Honor.

THE COURT: Are there any other materials the parties intended for me to review in contemplation of today's sentence?

MR. FINKEL: Not from the government.

MR. BILINKAS: No, your Honor.

THE COURT: Mr. Bilinkas, have you discussed the presentence investigation report with the defendant?

MR. BILINKAS: Yes, your Honor. I have reviewed it, and there are no additions or corrections.

THE COURT: Mr. Quirumbay, do you agree with that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does the government have any unresolved objections to raise as to any factual statements or the guidelines calculation that are contained in the presentence investigation report?

MR. FINKEL: It does not.

THE COURT: Thank you.

Having read the report and no objection having been

made, I hereby accept and adopt the factual statements contained therein and its analysis of the application of the sentencing guidelines and note that the report is consistent with the defendant's plea agreement which provides for a sentencing guidelines range of zero to six months' imprisonment.

With respect to the sentencing guideline calculations, I find that the base offense level is six. Because the defendant was a correctional officer at the time of the offense, the offense level is increased by two levels. Because the offense involves sophisticated means, the offense level is increased by two levels. Because the defendant has demonstrated acceptance of responsibility, the offense level should be decreased by two levels pursuant to Section 3E1.1(a). Accordingly, I calculate the defendant's total offense level to be six with a criminal history category of I. This places the guidelines range at zero to six months' imprisonment and the fine range from $1,000 to $9,500.

Does the government wish to be heard with respect to sentence?

MR. FINKEL: Yes, your Honor.

Your Honor, this is a difficult case for the government from a sentencing perspective. The reason why -- I think this is outlined a bit in the government's sentencing submission -- is the conduct here is very serious. To be a

correctional officer and willingly accept a bribe to introduce contraband into the prison is a very serious crime, very serious. The seriousness of the crime and the interest of general deterrence here, I think, are significant.

On the other hand, the defendant in this case accepted responsibility almost from the outset. He met with the government. He was extremely forthcoming. He provided information, answered all the government's questions, didn't hold back at all. He wanted to cooperate the government, tried to cooperate with the government. He wasn't able to cooperate with the government, but not really because of himself, just because he didn't quite know and have access to the sort of information that would be required for the government to determine that substantial assistance was provided.

In addition, the defendant's military record is, as I mentioned in the sentencing submission, quite profound. He has provided service on behalf this country that few, if any other, people have. I think those factors are important for the Court to consider while it also considers the seriousness of this offense.

So on balance, your Honor, the government thinks a guideline sentence is appropriate here.

THE COURT: Very well. Thank you.

Mr. Bilinkas, is there anything you'd like to say on your client's behalf?

MR. BILINKAS: Yes, Judge. First of all, I appreciate the government's statements with regards to my client, his attempt to cooperate with them, as well as his service.

Judge, this is something, if you look at those letters, is something completely out of character for Mr. Quirumbay. Other than that one act of indiscretion, he's lived a law-abiding life. And service to his country, I would say, is amazing, Judge. I've never even heard of someone who wasn't even a citizen doing the things that he did on behalf of this country.

He made a huge mistake here, Judge, and I can tell you personally, in talking to his family, his mother and father, his brother and sisters who are here, he has a great support system. And they're suffering. He is suffering, Judge, for his conduct. He truly feels horrible for doing what he's done, and he's realized what the consequences are. He wanted a career in law enforcement, and that clearly is not going to happen.

He has certain disabilities as a result of his service, Judge, post-traumatic stress as well as traumatic brain injury. As opposed to a lot of veterans that I've represented in the past, he's fought through them, got a college education, and started a career. As you can tell from those letters, Judge, he's a unique type of person.

As soon as this happened, again, I think he felt

horrible and didn't seek to do anything else or continue in this vein. When he got caught, he deeply regrets it. As opposed to a lot of other clients that I've represented over the last 38 years, Judge, I can tell you this deep emotional regret that this young man has for what he has done, how he's embarrassed not only himself but his family and all the people that have looked up to him.

So, Judge, I would also ask you to sentence him within that guideline range, and the bottom end of that range is zero. I think if there was ever a case where someone deserved a break -- and to get the low end of that range would be probation -- I say, Judge, it's Mr. Quirumbay. I assure you that for the rest of his life, he'll be trying to make up for himself and to his family for the acts that he's done in this particular case.

I thank you.

THE COURT: Thank you.

Mr. Quirumbay, is there anything you wish to say before I sentence you? You are not required to say anything, and your counsel's already spoken on your behalf, but this is your opportunity if you wish to speak.

THE DEFENDANT: Yes, your Honor. First of all, your Honor, thank you for allowing me the opportunity to speak. I would like to take this opportunity to -- sorry. I'm a little bit nervous -- to, first of all, thank the Court -- I mean

apologize to the Court, apologize to the prosecutor, the agent, and my girlfriend and my family who stands behind me.

My action in 2017 in September were completely out of character. It's not who I am, your Honor. You know, I have amazing support from friends, my family, my girlfriend, ex-coworkers, fellow Marines. But I know that I let them down, and I regret the actions that got me here. You know, it's something I can't live with. I think about it day and night. I just -- you know, I served this country honorably since I was very young, with the support of my family, of course. I can't go back in time, you know, and change my actions. I wish I could. But like I promised my family, I promise the Court that I will continue to better myself, get through this, and continue to become a better person. I accept responsibility for what I did, and I'm sorry.

THE COURT: All right. Thank you.

THE DEFENDANT: Thank you, your Honor.

THE COURT: Thank you. Please be seated.

In preparing to sentence Mr. Quirumbay, I've considered the presentence investigation report, the recommendation of the probation office, the letters submitted by counsel, all the arguments made by counsel in their written submissions, and all the presentations made in court here today.

I've also considered all the factors that are set

forth in Title 18, United States Code, Section 3553(a), which states that the Court shall impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

I'm also required to consider the following: the nature and circumstances of the offense and the history and characteristics of the defendant, the kind of sentences that are available, the applicable sentencing guideline provisions, any relevant Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Mr. Quirumbay, the crime that you are being sentenced for today appears to be the only significant blemish on an otherwise law-abiding and admirable life. You have no other criminal history except for an alcohol-related driving infraction. As the government notes in its submission, your record of military service on behalf of the United States is profound. The Court took particular note of the comments made about you by your fellow Marines.

Prior to the commission of the offense for which you are being sentenced today, you were an exemplary citizen and a role model for others to follow in your footsteps, but the crime that you did commit was not a minor one, nor was it the result of a moment's thoughtlessness. In exchange for a cash bribe, you secreted into the Metropolitan Correctional Center two cellular phones, chargers, and a small bottle of alcohol. As I'm sure you're aware, the presence of cellular phones in a correctional facility provides inmates with an avenue to commit crimes, tamper with witnesses, and they pose a significant danger to the administration of justice.

You had a good job, and it's a job that's an important job. As a correctional officer, you were in a position of public trust, and you breached that trust. You abused your position to benefit yourself personally.

Now, the core values of the United States Marines are honor, courage, and commitment. You served our country by putting your life on the line and surely showed tremendous courage and commitment, but you've brought dishonor to yourself. That said, I am mindful that this is your first and, I assume, last significant contact with the criminal justice system. I do believe you are remorseful and you're prepared to be a law-abiding citizen once again; that you will rehabilitate yourself in the eyes of your family, your friends, and your fellow Marines; and that you will not engage in any further

criminal conduct.

Accordingly, I intend to sentence you as follows:

First, one year of probation, which is within the guidelines and which, in my view, is appropriate for the same reasons the probation office recommended a sentence of probation rather than incarceration, including your military service, your many years as a productive and law-abiding member of society, the nonviolent nature of your offense, and the low risk of recidivism;

A fine of $1,400, which is the amount of the bribe which you received. Given your monthly cash flow as set forth in the presentence investigation report, I am providing this amount be paid at a rate of $50 per month starting 30 days from entry of judgment; and

A special assessment in the amount of $25, which is mandatory.

The probation office recommended that I impose four months of location monitoring and to restrict you to your residence during that period except for certain purposes, which would have had the effect, essentially, of placing you on home detention. In my discretion, I do not impose that condition. The sentencing guidelines provide that home detention may be imposed as a condition of probation, but only as a substitute for imprisonment. That's Section 5F1.2. Since I do not find that imprisonment is warranted, I decline to impose any period

of location monitoring.

Does defense counsel have any objection to this sentence that I intend to impose or know of any legal reason why I should not impose it as stated?

MR. BILINKAS: Absolutely not.

THE COURT: Does the government have any objection to the sentence I intend to impose or know any legal reason why it should not be imposed as stated?

MR. FINKEL: No, your Honor.

THE COURT: Mr. Quirumbay, please stand.

It is the judgment of this Court that you be sentenced to one year of probation, a fine of $1,400, and a $25 special assessment.

Now I'm going to read you certain mandatory conditions.

While on probation, you shall not commit another federal, state, or local crime, and you shall not unlawfully possess a controlled substance.

I am suspending the mandatory drug testing condition because I determine you pose a low risk of future substance abuse.

You must notify the Court of any material change in your economic circumstances that might affect your ability to pay the fine that I imposed.

In addition, I am imposing the standard conditions of

supervision along with special conditions.

You must report to the probation office in the federal judicial district where you're authorized to reside within 72 hours of the time you were sentenced unless the probation officer instructs you to report to a different probation office or within a different time frame. After initially reporting to the probation office, you'll receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

You must not knowingly leave the federal judicial strict where you're authorized to reside without first getting permission from the Court or the probation officer.

You must answer truthfully the questions asked you to by the probation officer.

You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements, such as the people that you live with, you must notify the probation officer at least ten days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

You must allow the probation officer to visit you at any time at your house or elsewhere, and you must permit the

probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

You must work full-time -- that's at least 30 hours a week -- at a lawful type of employment unless the probation officer excuses you from doing so. If you do not have full-time employment, you must try to find full-time employment, again, unless the probation officer excuses you from doing so.

If you plan to change where you work or anything about your work, such as your position or your job responsibilities, you must notify the probation officer at least ten days before the change. If notifying the probation officer at least ten days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

If you are arrested or questioned by a law enforcement officer, you must notify the police officer within 72 hours.

You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon.

That is, anything that was designed or modified for the specific purpose of causing bodily injury or death to another person such as nunchucks or Tasers.

You must not act or make any agreement with a law enforcement agency to act or confidential human source or informant without first getting permission of the Court.

If the probation officer determines you pose a risk to another person, the probation officer may require you to notify the person about the risk, and you must comply with that instruction. The probation officer may contact the person and confirm you've notified the person about the risk.

You must follow all the instructions of the probation officer related to the conditions of supervision.

Now, special conditions. You must provide the probation officer with access to any requested financial information, and you must participate in an outpatient mental health treatment program approved by the United States Probation Office, and you must continue to take any prescribed medications unless otherwise instructed by the healthcare provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the healthcare provider.

It is further ordered you must pay the United States a special assessment of $25. You shall notify the United States Attorney within 30 days of any change of mailing or residence address that occurs while any portion of the fine remains unpaid.

Failing to abide by these conditions could result in your imprisonment. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. You may be seated.

All right. I'm now going to read to you certain appeal rights that you have.

You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think that the sentence is contrary to law. However, you should understand that a defendant may waive his appeal rights as part of a plea agreement, and you have entered into a plea agreement which waives some or all of the rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe that the waiver is unenforceable, you can present that theory to the appellate court.

With few exceptions, any notice of appeal must be

filed within 14 days of the judgment being entered in your case. Your attorney will discuss with you whether or not you wish to file a notice of appeal. If you're not able to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*. If you request, the clerk of the court will prepare and file a notice of appeal on your behalf.

I direct that a copy of the presentence investigation report be provided to the Sentencing Commission and that counsel on any appeal have access to the report. Otherwise, it will remain under seal. The clerk will prepare the judgment and see to it that the required documentation is sent to the Sentencing Commission.

Now, my deputy will be providing Mr. Quirumbay with a special assessment form for him to take to the clerk's office in order to pay the special assessment fee today.

Do the parties have any other applications they'd like to make?

MR. FINKEL: Yes, your Honor. The government moves to dismiss any open counts.

MR. BILINKAS: Nothing further, Judge.

THE COURT: Your motion to dismiss is granted.

MR. FINKEL: Thank you.

MR. BILINKAS: Thank you, Judge.

THE COURT: All right. This matter's adjourned. Thank you. (Adjourned)